First case for argument this morning, Thursday, November 20, 2025, is 24-3239 Eastern Arkansas, Jackie Lackie v. Eric Noe et al. All right, Mr. Kasten, we'll hear from you first. May it please the Court, my name is Martin Kasten, and I represent the appellant, Mr. Jackie Lackie, in this matter, and we would reserve three minutes for rebuttal, please. Well, the clock will continue to run, so if you wish to reserve, you should sit down at that time. Thank you, Your Honor. This appeal challenges the Army Corps of Engineers' revocation of Mr. Lackie's longstanding dock permit, which was revoked in direct violation of an unambiguous settlement agreement that the Corps drafted. This Court should reverse for two reasons. First, the District Court erred in considering extrinsic evidence when construing the unambiguous settlement agreement that covered all known disputes and provided no exception for a subsequent revocation. And second, the District Court further erred when it found that the settlement agreement was only a partial settlement. Let's start with the settlement agreement, which here is construed under federal common law as guided by Arkansas law. The settlement agreement's plain text is clear, unambiguous, and comprehensive. The Corps drafted the settlement agreement and chose broad language to demonstrate the comprehensive nature of the settlement. It wrote the following words, All the parties agree that this agreement settles all known disputes between the Corps of Engineers and the landowner, Mr. Lackie. This language is clear and has only one meaning. It settled all known disputes. Likewise, the Corps drafted the agreement to state, The parties want to settle this case concerning all matters on public lands. Once again, all means all. Notably, the Corps could have, but did not carve out, a future permit revocation, if that's what its intention was. Instead, it employed traditional, unambiguous language that this was a global settlement of all matters and all disputes. At the District Court hearing, both sides agreed that the agreement's language, all known disputes, was unambiguous. And similarly, the District Court stated that the settlement agreement did not read ambiguously. And until its appellate briefing in this court, the Corps did not argue that the agreement was ambiguous. Yet on appeal, the Corps still fails to explain how the phrases, all known disputes, and all matters, are somehow ambiguous. They are not. Once the settlement agreement is found to be unambiguous, Arkansas law provides that courts must enforce it just as it reads. Words are to be given their ordinary meaning, viewing the subject of the contract as the mass of mankind would view it. That's what this court, in explaining Arkansas law, said in All Way Logistics. Similarly, in this court's decision in IPSCO in 2015, it stated that the language in a contract is the best evidence of the party's intention, and that courts interpret that language according to the plain and ordinary meaning. And the Supreme Court of Arkansas has held that a settlement settles all matters when it uses phrases such as, quote, all controversies and claims. That was in the Armstrong case. And likewise, a settlement settles all matters when it uses the term the entire matter. That was the Scullin case. Now, let me ask you this. On the matter of all known disputes, how would you describe the status of the permit at the time of the settlement agreement? The status of the permit at the time of the settlement agreement would have been revoked. I take it back. At the time of the settlement agreement, it was not yet revoked. Yes. There was this accompanying letter that we've talked about that says Mr. Harper says that we are recommending that the commander revoke your permit. That is correct. Is that right? That is correct, Your Honor. Can you explain why you believe there was a dispute at that time regarding the permit that was resolved in the settlement agreement? Your Honor, at that time, the April 8 letter had stated that revocation was a possibility. And therefore, it was a known dispute that then the settlement agreement that was signed about two weeks later encompassed and resolved, in our opinion, Your Honor. Well, that's what I'm getting at. Is the possibility of a revocation the same as a dispute? Or does there need to be some formal action before a dispute arises? I think the threat is sufficient, Your Honor, by the Corps and particularly Colonel Noe in that letter, as I recall. I don't believe that… Well, Colonel Noe's letter comes later. Oh, you're right. It's Mr. Harper's letter. Yes. I think that that's sufficient. The threat of action is a dispute at that point. Yes. And, Your Honor, we do believe that this resolved all known disputes and that it was extinguished by the settlement agreement. And then the Corps acted out of accordance with the law when it subsequently revoked the permit. And notably, this is not a partial settlement. On appeal, the Corps argues that the settlement agreement was only for trespass or criminal issues. But that's not correct. The plain language of the agreement itself is not limited to, for example, all trespass issues or all criminal issues. It's much broader. It says… I need a little more help on this dispute question. Let's say your man did not sign the agreement. What could he have done to address what you say was a dispute regarding the permit at that time based on this letter from Mr. Harper? I mean, was there some forum in which this dispute was pending, or why was there a dispute? There was not a formal forum, Your Honor, other than essentially, I suppose, challenging that. And then getting the ultimate arbiters, Colonel Noe's opinion on it. When Harper said we're recommending the commander revoke your permit, did that provide Lackey with some opportunity to respond to the recommendation? Only informally, Your Honor. I don't know that there was a formal forum at that point, but I don't know that one was needed. Did Lackey respond in some way before Colonel Noe wrote, or did he… Do you know, does the record show whether he responded to the Harper letter in any way about permit? The record shows, Your Honor, that after the letter was sent, Mr. Lackey called the Corps' office and said that he wanted to put this issue behind him, and then showed up at the Corps' office… To sign the agreement. To sign the agreement. That is correct. So there wasn't any back and forth that you know about regarding this potential of a permit revocation, other than the signing of the agreement, which you say resolved it. And other than a telephone call that he had with the Corps' office about the issue and trying to resolve it in advance of the settlement agreement. But the Corps doesn't provide a forum, as far as you know, to respond to a recommended revocation. I am not aware of one, Your Honor. All right. Thank you. And, you know, this was not a partial settlement. In the Armstrong case, the Supreme Court of Arkansas stated that once the parties have deliberately contracted with one another to settle, quote, neither party can be permitted to introduce testimony to show that the release was only partial. So here it was air for the district court to consider extrinsic evidence, including the April 8 letter, when construing the unambiguous agreement, and then finding that it was only a partial settlement. And let's talk about why this April 8 letter was extrinsic. It was never part of the settlement. Mr. Lackey did not sign it. The settlement agreement never mentions it. And it was never incorporated by reference. So you're saying we should not even look at the letter? That's correct, Your Honor. The letter should not be used to determine what the language of the settlement agreement means. Should it be used to determine what known disputes existed? I suppose that it could be. That would not be contrary to, say, the parole evidence rule or extrinsic evidence, because it's not trying to conflict with a direct term of the agreement, but would be used to show that there was a dispute, for example. I see. So you don't object to considering the letter. For that purpose, you just say it shouldn't be used to determine the meaning of the agreement. You're correct, Your Honor. I see. And so under Arkansas law, does it matter? I mean, as we look at this, under Arkansas law, there's contract law that's out here, but we're really reviewing this case to determine whether or not the agency has acted arbitrarily and capriciously under the Administrative Procedures Act, right? Well, Your Honor, it's not only arbitrary and capricious. I believe it's Section 706 of the Administrative Procedures Act also talks about that the court reviews legal questions involving whether something is in accordance with law. And the Supreme Court, actually last year in the Loeber-Bright case, stated that it's a court's duty, not an agency's duty, but the court's duty to decide questions of law under the Administrative Procedures Act. And that's what we think should be done here. And so we're going to import the federal common law, which would include considering the Arkansas contract law as part of that law to be interpreted, rather than the policies, procedures, and statutes that govern the Corps' activities. Well, I think that they would both be considered as the law, Your Honor. I think here the issue is whether the Corps, under the federal regulations, has the ability to revoke the permit after it has signed a settlement agreement that covers all known disputes. So I don't think that we necessarily need to ignore the other ones. It's just that the settlement agreement controls, in our opinion. Now, the consideration of extrinsic evidence, is that procedural or substantive in your view? The exclusion of extrinsic evidence would be substantive law, Your Honor. Which I expected you would say. And then my question is, if it's substantive, then why can we consider it for any purpose at all? I mean, because you were saying earlier, in response to the Chief Judge's question, that we could consider it to frame up what were the disputes. But if there's a parole evidence, extrinsic evidence rule, how can we do that? I think the distinction is that it cannot be used to construe a contract in conflict with an expressed provision of the contract. That's how I understand that rule, Your Honor. In terms of the APA, then, are you saying that the court acted arbitrarily and capriciously because it misconstrued the contract? Is that how it would work analytically? I think analytically, Your Honor, under 706, I believe that it would be, it talks about the reviewing court shall decide all relevant questions of law, and it would hold unlawful and set aside agency action found to be otherwise not in accordance with law. I think that's the kind of legal hook that we're talking about here. And I see I'm into my rebuttal time, but the court has... You may reserve. Thank you for your argument. Thank you, Your Honor. Mr. Pence, we'll hear from you. May it please the Court. My name is Richard Pence. I'm Assistant U.S. Attorney with the U.S. Attorney's Office in Little Rock, representing the Appalachia Corps of Engineers and their officials in this case. Could you adjust the microphone a little bit, Mr. Pence, so you're speaking into it? Thank you. Okay. Is that better? Yes. Okay. Thank you. First, I would, I think to start with, I should say that because of the Tucker Act, the district courts do not have the power to grant specific enforcement of a government contract. Mr. Lackey had a claim, a breach of contract claim in the district court, and the district court dismissed it for lack of subject matter jurisdiction. And at that point, Mr. Lackey's argument that his settlement agreement somehow prevented revocation of his permit was put into an entirely different context, not contract law, but Administrative Procedure Act law, which is judicial review of an agency action. And I would make basically three points that I would think are pretty obvious. First, again, this was a claim before the district court, was an Administrative Procedure Act claim, and that is, I think, beyond dispute that in Administrative Procedure Act cases, the district courts are directed to consider the entire record, administrative record before the court, or such part of it as the parties bring to the attention of the court. That is what the courts do, and that is what the district court did here. It looked to parts of the administrative record to see if the agency's decision to revoke Mr. Lackey's permit was somehow arbitrary and capricious. That is, it violated something they had agreed to do. Well, assuming you're right that we should consider the letter, the Harper letter, how does that help you? Why doesn't that actually show that there was a known dispute regarding the permit that was then resolved by the settlement agreement? Well, I would say the letter doesn't actually reflect an existing dispute at that time, but I think what the court was looking to see was Mr. Lackey deceived or tricked here. That is, did the court agree to do something and then did not follow through? But you don't think the court saying we're going to recommend to the commander that your permit be revoked amounts to a dispute? No, sir. What do you think it takes for the permit dispute to arise? Well, I think it would be actually the revocation of the permit giving rise to whatever rights Mr. Lackey would have at that point. Why does the court notify a person that it's recommending revocation of a permit? Is that a procedural step? That's a core policy that the property owner be notified that the recommendation will go forward. Well, if that's core policy to give notice, doesn't that seem to indicate the commencement of a dispute? I wouldn't think so. I think it's just to make sure that there's nothing unfair here that the property owner understands, although he's facing a citation, which is a misdemeanor and possibly a fine, an imprisonment or a fine, that even though that may be resolved, there's still a question of the permit. Well, if a man like Lackey gets a letter like this from Harper recommending revocation, can Lackey write to the commander and say I understand Harper's recommending revocation and here's my argument for non-revocation? Could he have done that? Yes, he could have. Nothing preventing that? No, not to prevent that. Why isn't that a dispute then? Why isn't there a dispute pending before the commander as to whether to revoke the permit? The court by regulation is required to notify in writing the property owner. Yeah, I get that, but usually that kind of notice comes at the commencement of a dispute so that the party can respond. Well, I would say that's not really the point here. Whether it's a dispute or not, can the district court in an Administrative Procedure Act case look to the entire record to see whether the agency's decision was arbitrary or capricious? And that's what the district court did and that's what the court's supposed to do in that kind of case. So it's not contract law. And I would say also another point I would make is Mr. Lackey did not present this issue to the Corps of Engineers. So he's asking for a reversal on an issue that was never considered by the Corps. How do you know that? Because I asked the Corps. Well, there was no record of this. Well, you can see, I think it's a perfectly reasonable conclusion from the record that Mr. Lackey did not believe that his... Maybe, maybe not. Was there a record? Was there a record made? No, it's an informal hearing. Right, so as we are here today, no one can say whether or whether the matter was discussed or not, can you? I think we can. I don't believe Mr. Lackey would have offered to pay $32,000 to avoid revocation if he felt like the Corps had agreed there would be no revocation. Maybe that was cheaper than paying Mr. Kasten to litigate the case all the way to the 8th Circuit. I'm sorry, sir? Maybe paying $32,000 was less expensive than paying Mr. Kasten to litigate the case all the way to the 8th Circuit, so he made a business decision. Well, I don't know. I can't answer for Mr. Lackey. I don't know how he came up with the $32,000 or what his thinking was, but that was... The record is clear here. Again, the Corps didn't trick Mr. Lackey. He was told that the Corps was going forward with a revocation. He asked about the revocation several times and was told that the settlement agreement and the payment of the landscape damages did not avoid the revocation. When did the Corps tell Mr. Lackey that it was going forward with revocation? I'm sorry, sir? When did the Corps advise Mr. Lackey that it was proceeding with revocation? The letter to Mr. Lackey in closing the settlement agreement and the payment of $6,000 for the landscape damages did say that the project office would be recommending revocation of his permit. Go ahead. What is the reason that you would offer behind this decision to go forward with revocation? To avoid? What led to it? What happened here, the cutting of trees on government property, is a misdemeanor subject to six months in jail or a fine, I believe, up to $5,000. He was presented with an opportunity to pay the landscape damages in lieu of referring the case for prosecution. That's the reason they offered him the alternative. Trees were cut. Yes, sir. A couple of times, I think. Yes, sir. And supposedly that's against regulations. Yes, sir. That's not permitted. So the Corps thinks that Mr. Lackey cut the trees. What did Mr. Lackey say about that? Mr. Lackey never admitted cutting the trees. Okay, isn't that just by definition a dispute? No, because he had the opportunity of contesting the citation and the possible fine and imprisonment by paying for the damages to the landscape, and that's what he chose to do. So he had an option there. I mean, he didn't have to take it, but he chose to do that. But at the same time, he resolved all known disputes with the Corps, correct? That's the words in the settlement agreement, yes, sir. And paid. Didn't he pay the $6,000? Yes, he did. He paid the $6,000. Administrative record shows that he was told that the $6,000 was in lieu of a citation and the recommendation for revocation would go forward and it would be a lengthy process. He would hear something. So he was told that. So that's what the district court looked to, looked to their record. Here's what I think the question I keep struggling with is that within this criminal investigation, was it possible to settle the dock dispute? Well, that is strictly up to, that's a decision for the Corps of Engineers. Now, he can argue, don't do it for these reasons. Yeah, but that's the question. Could you have entered into a settlement agreement at the front end that said he gets to keep his dock? No, because only the district engineer can revoke a permit. The project office doesn't. This is where this settlement agreement was signed. They don't have that authority. All right, so the person in the project office has no authority to settle the dock claim. Well, that's correct. They can't give up an authority they never had. How do we know that? How do we know Harper couldn't settle the? Because that's in the regulation, sir, that only the district engineer can revoke a permit. But how do we know Harper can't go to the commander and say, we want to get this resolved and we're going to agree not to revoke the permit? I mean, Harper has to recommend the revocation, as I understand it, to trigger the revocation. So couldn't he agree not to recommend revocation? The project office could have recommended no sanction, some other kind of sanction or whatever. And if you can do that, why doesn't the settlement of all claims, all disputes, why doesn't that cover? Because, I mean, I get what you're arguing is that that doesn't pertain to this because we're in the APA over here and the APA was supposed to look at the whole record, right? And that has some attraction to it. But the question is, is that if the person has the authority to not to refer it on and to have it all over, and there's been discussion back and forth about the revocation, right? And if we look at the whole record, we'll find that Mr. Lackey probably understood that you were still going forward with the revocation, notwithstanding the signing of this settlement agreement, right? Yes, sir. But on its face, the settlement agreement says it settles all disputes, right? And if we get stuck in a world where we are interpreting that settlement agreement and what it means and who's got what authority to do what, that's a very different place than where you want to be. And so, because you want to be here in the APA land, my question is, how do we avoid this thing over here with the contract piece to get into the APA? Well, you avoid that by looking at the administrative record. All I'm saying, yeah, if the district court wants to take a look at this settlement agreement argument, fine. But the court shouldn't be confined just to that one document. The court should look to the entire record, which is what the district court did, and that's what the court's supposed to do. Without a record of the actual hearing and the issues that were raised at that hearing, is this record complete enough for us to do an appropriate appellate review? Yes, sir. To me, it's just obvious from the administrative record that neither Mr. Lackey or the court believed that by paying the $6,000 and signing that agreement, there would be no revocation. To me, that's just as obvious as it can be, and I think it was to the district court. Why is it obvious? Tell us why it's obvious. Okay. Because of things that happened later, you mean? Because of the letter that enclosed the agreement specifically saying that the project office was going to recommend. I'm not sure how that helps you, because you could also read that to mean Lackey knew he better sign the agreement to avoid that process. That's the other way to look at it, but go ahead. What's your next thought?  The letter, that was, of course, before he paid the $6,000. He twice inquired of the project office about the status of revocation and was told it was going forward, but they hadn't heard anything. It would be a lengthy process, and then after this informal hearing, two days after the informal hearing, for which there was no written record, Mr. Lackey offered to pay $32,000 to avoid revocation. How long after the settlement agreement was signed was the informal hearing that you're referring to? Do you know the timeline on that? Is that in the record? I believe it is in the record. I believe it was in May of 2022 when the informal. May of 2022. I think so. Colonel Noe's letter is July of 2022. I'm sorry, sir? Colonel Noe's letter then comes July 11, 2022. Okay. You think the hearing was in May? That's my recollection, sir, but my memory is not what it used to be, so I would refer the court to the record. So those are my main points. I'm out of time. Thank the court for the court's attention. Thank you, Mr. Pence. Mr. Kasten, why don't you address, if you would, the points about what happened after the settlement agreement was signed and Lackey negotiating to resolve the permit and inquiring about the permit. If we look at the whole record, does that show that he knew that the settlement agreement was narrower than you're claiming now? No, Your Honor, it does not. Mr. Lackey did, in fact, he was honestly, after getting this revocation letter at that point, was kind of scrambling a bit and he was trying to find any way that he could keep his dock at that point. And so, yes, after the fact, he did make an additional $32,000 offer. And, you know, I think that, you know, he was without an attorney at the time and was just trying to do what he could to hang on to it. Where did that number come from, that $32,000, do you know? The record does not reflect that, Your Honor. Okay. I would like to point out, though, that the court's position would mean that every time the government sends a cover letter with a proposed agreement, that letter changes the terms of the agreement itself or at least has to be considered to change. And that is not the law and such an approach, frankly, would breed uncertainty. I think what they're really arguing is that there was a series of ongoing negotiations and there was information that was going forward and that the cover letter itself made plain that the settlement of the criminal piece did not settle everything else and that, therefore, we're sitting in the APA land. And in the APA land, somehow, magically, if you go through the totality of the circumstances, that we can use those ongoing negotiations, the conversations that took place, the meeting that took place afterwards, the telephone conversation that took place, then the request for a hearing after notice was given, that all of that shows that everybody understood that this was still an open question and that, therefore, we don't have to worry about the all-known disputes. Now, you obviously believe that whatever that is, that's lawless, and I'd like to know why you believe that. Well, Your Honor, we believe that the contract controls that this court, for example, and I'm sorry, Your Honor, my time is up. May I respond? Go ahead. Please respond. This court in the 2019 case, Prairieland Holdings, also an APA review case, looked at a contract and determined that it controlled and that, I believe, even determined that it was unambiguous. So it's not new, in our opinion, that this reference to a contract and its binding nature in an APA context, that that is still what controls the outcome here. Thank you, Your Honors. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course.